Per Curiam.
Lackey gave a bond to McGee for a horse and money, the horse to be delivered five days after; the money to be paid in nine months. The note was dated the 6th of September, 1804; McGee assigned it to Thomas Berry the 26th of March, 1805; Berry assigned to Lynch the 15th of July, 1805; Lynch applied to McGee for the money the 17th of July, 1805, who requested the plaintiff to sue Lackey, and promised that he would show property of Lackey sufficient to satisfy the judgment if it should be obtained, or that he would pay the same. The same day Lynch sued Lackey, and obtained judgment in May, 1806, and the defendant did not show the property nor pay, &c.; verdict for the plaintiff, and judgment. Lackey had nothing to pay with. After judgment against Lackey, several hundred dollars were made out of his property, by executions for the satisfaction of debts due to creditors. Lackey, Berry, and McGee, all lived in Maryville, or the vicinity thereof. The court refused to instruct the jury that the promise of McGee was within the statute of frauds and perjuries, and also refused to instruct them that a special request was needful to be made by the plaintiff to McGee to show the property. The court instructed them that McGee’s promise, together with his assignment, rendered him liable to the amount of the covenant and the costs of suit. Judgment for the plaintiff, upon which errors were assigned.
* The first count is, that McGee became liable by Lackey’s failure to pay. The second count was for money had and received to the use of the plaintiff, Lynch. The first count cannot be supported; there is no privity between Lynch and McGee, whence it could be implied that such a promise was made. A promise or agreement between Berry and McGee, is not by any law assignable to Lynch. Upon the first count, then, is McGee liable to Lynch by virtue of the assignment to Berry ? The assignee of an unnegotiable instrument, as this is, may sue the obligor in the name of the obligee ; that is the effect of the assignment. A court of law would hinder the obligee from releasing the *87 debt or receiving the money or horse ; it would consider the debt as belonging to the assignee, and would set off a debt due from the assignee to the obligor. The word assign implies an agreement or covenant, if the assignment be under seal, that the assignee shall be permitted to receive the money, and that the obligee will not, by any act of his, defeat him. It raises a promise or agreement between the assignor and assignee, unless it appear the assignee gave for it a sum inferior in value to the money and property called for in the bond, that if the money, by using proper diligence, could not be got from the obligor, then the assignor would pay it to the assignee. It is not believed, though so intimated in 3 Cranch, 311, 316, 319, that the assignee can in equity sue him who indorsed to his assignor, there being no agreement between them, either express or implied. Upon what principle can it be done? 3 T. 757. If indeed he could, then it would be perceived that there was a moral obligation which could be made the foundation of a promise binding in law. What is an assignment by the indorser to the assignor ? The very same engagement that is between the assignor and assignee. And is that agreement or promise implied, passed to the assignee with the original covenant ? It is not. In * the case of a negotiable paper, every indorsement is an undertaking to pay to the ultimate indorsee upon certain conditions, which by the law merchant are transferred to him. Not so where the law merchant does not apply. It seems to follow that the assignee, Lynch, cannot sue McGee upon the assignment made by, him to Berry. Lynch, however, has sued him upon an express promise to show property or pay, if he, Lynch, would sue Lackey, which he did and obtained judgment, &c. If a man supposing himself bound, when he is not, promise to pay, or do any other act, he shall not be bound. 3 T. 757; 5 Bur. 2670 ; 7 T. 712. Here it is said he induced Lynch to sue Lackey, which before the defendant’s promise he would not have done. And it is true, that a loss sustained by the promisee to obtain the benefit of the promise made by the promiser, is a sufficient consideration. A promise simply to pay when he is not liable, is not obligatory, because, say the books, it is nudum pactum. Is it not equally ineffectual, if not simple, but conditional — Do this, and then I will pay; especially if he believed that upon doing that thing, he, the promiser, was liable without any promise ? He acts wholly under a mistake. He *88 is misinformed of his rights. His promise is upon an understood condition of his own liability, which makes it of no effect if the condition do not exist or be not performed. But it may be said, here is not simply a promise to pay, upon a supposed liability which does not exist, but that the promise is to take effect after something to be done on the part of the promisee; he is to sue Lackey, &c. The promise in this respect is equally caused by the mistake of the promiser as the simple promise to pay; the supposed liability of the promiser is the foundation and cause of it. If it be true that the failure of an understood condition will take from the promise its obligatory force, that may equally take place on a supposed state of the law as on a supposed state of * the facts. As was the case where a school-master was applied to and said that land could never ascend, and therefore, on the death of a brother, decided in favor of the younger of two surviving brothers. For this mistake a deed executed by the elder to the younger was set aside. Newland, 432. It may be supposed that McGee was under a moral obligation, if not a legal one ; that Lynch might sue Berry, and then Berry might sue McGee and recover. That recourse would depend on circumstances. At all events, Berry must first have paid. Berry, if any loss were sustained by keeping back the bond, which might have been avoided by a timely return of it, would not be allowed to recover against his immediate assignor. If the consideration given by Berry were so trifling as to show the bond was taken without recourse, the jury, under the influence of that consideration, might find the fact. The moral obligation therefore is not apparent, and cannot be taken on a view of this case to have existed. Judgment of the Circuit Court reversed.
Note. As to the effect of indorsement of unnegotiáble paper, this ease is overruled by Simpson v. Moulden, 3 Cold. 429; Moore v. Weir, 3 Sneed, 46; Kirkpatrick v. McCullough, 3 Hum. 171; Whiteman v. Childress, 6 Hum. 309; Lawrence v. Dougherty, 5 Yer. 435.
See, as to the term, “ assign,” Lawrence v. Dougherty, 5 Yer. 435; King’s Digest, 702, 703, 1232, 11,073.